## Commonwealth *v.* Calio, Appellant.

Argued April 24, 1944. Before KELLER, P. J., BALDRIGE, HIRT, KENWORTHEY and RENO, JJ. (RHODES and JAMES, JJ., absent).

*Charles S. Schermer,* for appellant.

*Franklin E. Barr,* Asst. District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY RENO, J., July 15, 1944:

The Act of May 31, 1933, P. L. 1116, as amended by the Act of June 5, 1937, P. L. 1672, 31 PS §397, et seq., establishes purity, quality, and sanitary standards to be observed by those engaged in manufacturing and selling ice cream and related products, and the statute makes it unlawful, inter alia, to sell ice cream and water ices containing less than certain required percentages of butter fat and organic acids. Section 9 provides: "Any person ...... violating any of the provisions of this act, ...... shall, for the first or second offense, upon conviction thereof in a summary proceeding, be sentenced to pay a fine ...... and for a third or subsequent offense, shall be guilty of a misdemeanor, and sentenced to pay a fine ...... or, in the case of an individual, ...... to undergo an imprisonment ...... or both, in the discretion of the court. ......"
Appellant was indicted, convicted, and fined as a third offender for selling substandard ices and ice creams, and on this appeal has assigned as error the refusal of his point for binding instructions.

The undisputed facts are that appellant made illegal sales of deficient ice cream and water ice on or about May 14, 1943, and subsequently on June 4 and July 20 of the same year. On June 30, 1943, he was summarily convicted and fined by a magistrate for the sale of June 4, while on September 10, 1943, there was an-

other summary conviction and fine for the offense of May 14. Also on September 10, 1943, he was held for the grand jury as a misdemeanant for the July 20th sale, and this sale was made the basis of the indictment upon which the conviction was obtained. It will be seen, therefore, that the foundation of the prosecution was the third illegal sale, in point of time, which sale was made by appellant after he had been summarily convicted once, but not twice, for his previous infractions. The sole question for decision is presented by appellant's contention that punishment for a third offense cannot be inflicted under the statute unless the offense was not only in fact the third illegal sale but that the sale was also effected after two prior convictions.

The prevailing interpretation given to statutes visiting more severe penalties upon repeated offenders is thus stated in 25 Am. Jur., Habitual Criminals and Subsequent Offenders, §12: "It is usually essential to the imposition of greater punishment for a second or subsequent offense that there be a conviction or convictions antedating the offense for which sentence is to be imposed. ...... As a general rule, it is a prerequisite that the prior conviction precede the commission of the principal offense, since the statutes are aimed at persons who persist in criminality after having been convicted." The earlier cases in Pennsylvania decided under statutes analagous to the Ice Cream Law establish the prevailing principle in this jurisdiction.

Both defendants in *Rauch v. Com.*, 78 Pa. 490, had made two sales of liquor without a license and one had made an additional sale under the same circumstances. They were indicted under the Act of March 22, 1867, P. L. 40, §4, which provided that any person making such sales should, "for the first offence, be fined, ...... and for the second shall be fined and imprisoned, &c." in the discretion of the court. The second and third

indictments did not allege a former conviction, and on appeal from a sentence of imprisonment the Supreme Court said, in reversing, (p. 495): "But clearly the substantive offence, which draws to itself the greater punishment, is the unlawful sale after a former conviction."

In *Com. v. McDermott*, 224 Pa. 363, 73 A. 427, reversing *Com. v. McDermott*, 37 Pa. Superior Ct. 1, the defendant was charged with selling colored oleomargerine in violation of the Act of May 29, 1901, P. L. 327, 31 PS §801, et seq., which provided penalties, in §7, for first offenses and more severe punishments for convictions of subsequent offenses. Defendant's sentence as a second offender was vacated because the second sale had been consummated after a verdict of guilty, but before a judgment of sentence, for a prior offense of the same nature. In that case the Supreme Court reasoned as follows, (p. 366): "The severer penalty is imposed by the legislature because that imposed for the first offense was ineffectual. The second offense, carrying with it severer penalties is, therefore, not committed in law until there has been judgment for the first. 'When a statute makes a second offense felony, or subject to a greater punishment than the first, it is always implied that such second offense ought to be committed after a conviction for the first; for the gentler method shall first be tried, which, perhaps, may prove effectual:' Hawkins's Pleas of the Crown, ch. 40, sec. 3." The uncertainties which might have arisen out of what was said, rather than what was actually decided, in the earlier cases of *Com. v. Fink*, 16 Pa. Superior Ct. 191, and *Com. v. Neill*, 16 Pa. Superior Ct. 210, (upon which the court below relied), were thereby laid to rest, as it was plainly stated (p. 365) that a "subsequent offense", within the purview of the statute, "means a sale after a former conviction of the same offense, for a law can never be judicially said to have been offended against

until the offense against it is established in a court of competent jurisdiction."

The Act of April 29, 1929, P. L. 854, which provides in §2, 19 PS §922: "A person who, after having been three times convicted, within or without this Commonwealth, [of certain crimes] ...... shall, upon conviction of any such crimes for a fourth or subsequent offense committed within five years after the prior offense, be sentenced," to life imprisonment in the discretion of the court, was interpreted in *Com. v. Sutton,* 125 Pa. Superior Ct. 407, 189 A. 556. Sutton had been twice convicted in New York of crimes of the class enumerated in the statute, when he came to Pennsylvania and committed two more of the specified offenses before being apprehended and convicted for them. We there said, (p. 412) : "The act does not contemplate life imprisonment for a person convicted of the commission of four offenses, but contemplates a fourth offense committed after he had been three times convicted," although the statute in terms requires merely that the fourth offense be committed within five years from the commission of, not the conviction for, the prior offense. See also *Com. ex rel. Turpack v. Ashe, Warden,* 339 Pa. 403, 15 A. 2d 359.

Superficially considered, the words of the statute might conceivably support the meaning ascribed to them by the court below which held: "If it is a third offense in fact it is immaterial when the previous convictions were had." But the "object to be attained" is the authentic password to the true meaning of "the words of a law": Statutory Construction Act of May 28, 1937, P. L. 1019, §51 (4), 46 PS §551. We think that it is clear that the purpose of a legislative provision increasing the severity of punishment for repeated offenders is to allow convicted persons an opportunity for reform, but to temper the leniency with a promise of sterner treatment in the event that the

milder forms of reproof are not successful. Interpreting the statute consonantly with this purpose, we are required to hold that the heavier penalties shall be imposed only upon those who persist in violating the statute after two convictions have been obtained. This appellant had not been twice convicted before he made the sale for which he was indicted, and his point for binding instructions should have been affirmed.

The judgment is reversed, and the defendant is discharged.